**STATE, ex rel. BOARD OF EDUCATION, BELLEFONTAINE CITY SCHOOL DISTRICT, Relator, v. JONES, Clerk, Board of Education, Bellefontaine City School District, Respondent.**

Common Pleas Court, Logan County.

No. 24513.   Decided June 21, 1955.

Edgar L. Miller, City Solicitor, Bellefontaine, Peck, Shaffer & Williams, Cincinnati, for relator.

John B. Kelly, James B. West, James R. Goslee, Belllefontaine, for respondent.

**OPINION**

By GODWIN, J.

This is an action in mandamus brought by the State of Ohio, ex rel., Board of Education, Bellefontaine City School District, Bellelfontaine, Ohio, the Relator, against Joe E. Jones, Clerk of the Board of Education, Bellefontaine City School District, Bellefontaine, Ohio, the Respondent.

"Mandamus is a writ issued, in the name of the State, to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, or station."

The prayer of Relator's petition is that a writ of mandamus issue, ordering Respondent Joe E. Jones, Clerk of the Board of Education, Bellefontaine City School District, Bellefontaine, Ohio, to sign a $25,000.00 note in anticipation of the issuance of bonds voted for by said School District on the 3d day of May, 1955.

The issue is joined by the respondent refusing to sign said note.

The ground for this refusal is that the Relator failed to comply with the statute, §§133.11 and 133.18 R. C., with reference to the publishing of notice of said election. Sec. 133.11 R. C. provides,

"Notice of the election shall be published in one or more newspapers of general circulation in the subdivision **once a week for four consecutive weeks prior to the election.** Such notice shall state the amount of the proposed bond issue, the purpose for which such bonds are to be issued, the maximum number of years during which such bonds shall run, and the estimated average additional tax rate, expressed in dollars and cents for each one hundred dollars of valuation as well as in mills for each one dollar of valuation, outside the limitation imposed by **Section 2 of Article XII, Ohio Constitution,** as certified by the county auditor." (Emphasis by the court.)

The issue raised here was presented to the court on the petition, the answer, the evidence, argument of counsel and memorandum brief by Relator.

The only issue in the case is whether the failure of the Logan County Board of Elections to comply strictly with §§133.11 and 133.18 R. C., with reference to publishing notice of the coming elections, renders the issuing of said bonds to be a valid obligation of the School District.

The provisions of said statute require that notice of the election be published once a week for four consecutive weeks prior to the election.

This election was held on the 3d day of May 1955. The correct dates of publication to have complied with the statute would have been April 4, 11, 18 and 25, 1955. The dates the notice actually appeared in the BELLEFONTAINE EXAMINER were April 22, 25, 27, 29 and May 2, 1955.

In order to comply with the provision to be published once a week for four consecutive weeks would have required five publications.

There really were five publications, but they failed to appear for four consecutive weeks as required by the statute.

The evidence and the record so show that every step taken by the Board of Education to make these bonds a valid and subsisting obligation against the School District have been fully complied with, the only

exception being that the statute has not been fully complied with in the publication of notice of the election.

The record shows that an extensive campaign began as early as January, 1955, to publicize the fact of the election; the time and place of holding the election; and the purpose for which the bonds were to be issued. This activity was carried on down to the day of the election. This is shown by the exhibits of the newspaper publications and news items regarding the bond issue carried in the BELLEFONTAINE EXAMINER, by hand bills posted in public places throughout the School District. A Citizens Committee carried on an extensive campaign to reach every citizen in every part of the School District; letters written and mailed out to the electorate, cards mailed to reach every householder, circulation of the election ballot; the Chamber of Commerce and the Junior Chamber of Commerce, their activities in bringing the bond issue before the public; photographs taken by Thomas Hubbard carried in the BELLEFONTAINE EXAMINER with items under the photographs. This began in January, 1955, was stepped up and carried on extensively beginning about March 15, 1955. All things essential to be carried in the notice were contained in newspaper items; the distribution of literature pertaining to the election by the Citizens Committee. Broadcasts over our local Radio Station WOHP were systematically carried on by speakers and discussions as to the bond issue.

Prior to the election, April 17th to be exact, a large sign was erected in the northwest corner of the court house lawn, calling attention to the election to be held on May 3, 1955, for the issue of bonds of the Bellefontaine City School District for school purposes. This was in large letters and figures where all could see. This sign was still standing at the time of this hearing.

This, in substance, is the evidence before the court which is based on the record. The question for the court now to determine is, Was this extensive publicity campaign sufficient to place the Board of Education of the City of Bellefontaine School District in substantial compliance with §§133.11 and 133.18 R. C., regarding publication of notice.

The answer to this question will have to be found in the law governing such situations.

This court is well aware that most courts uniformly hold that statutory requirements are mandatory and must be strictly complied with.

The effect of a publication of a notice of election on a bond issue for a period less than that required by statute and the effect of irregularities in said notice of election are questions for determination by the proper court, upon consideration of all the facts.

1927 O. A. G. p. 2588.

Some courts now hold that under certain circumstances there is a substantial compliance with the Uniform Bond Law, and that unsubstantial irregularities which do not prejudice any one may be disregarded.

Where the notice of a special election was published for four times weekly, but the entire period of four weeks after the first publication did not elapse before the election was hld, the election was not invalidated.

Conley v. New Boston, 26 O. O. 71.

The terms of §§2293-15c and 2293-21 GC, now §§133.11 and 133.18 R. C., providing that the notice of an election on a proposed bond issue of a political subdivision shall be published in a newspaper of general circulation once a week for four consecutive weeks prior to the election, are sufficiently met where the notice is published once a week for four consecutive weeks but the first notice appeared slightly less than 28 days before the election.

The State, ex rel Board of Education of Springfield Local School District, Summit County, et al. v. Maxwell, 144 Oh St 565.

This decision did not hold to the strict compliance with the statute. In this decision we find on page 567 this language:

"However, where there is substantial compliance with the statutory requirements and there is nothing to indicate that the result of the election might have been different had there been full compliance, the election will not be invalidated."

1. Failure of election officials to publish, for the full thirty days required by law, notice that at an approaching election the question of authorizing an issue of municipal bonds will be submitted, does not render the election invalid as to said bonds, where the election was held in other respects in accordance with law and there is abundant evidence that knowledge of an intention to submit said question was brought home to the great body of the electors.

The City of Cincinnati, by Charles A. Groom, its Solicitor v. George Puchta, Mayor, and William Leimann, Auditor, 25 C. C. (ns) 458.

This case was affirmed by the Supreme Court of Ohio as reported in 94 Oh St 431. On Page 432 of this opinion we find this language:

"The chief purpose of this statute is evident, to-wit: four weekly publications. And these were made. We do not hold that in all cases such would be a sufficient compliance with the law, but in the absence of any allegation here that anybody was denied the right to vote, by reason of the statute not being literally complied with for the full thirty days the regularity of the election proceedings is upheld.

"We have no doubt that where an election is held in other respects as prescribed by law, and notice in fact of the election is brought home to the great body of the electors, though derived through means other than the proclamation which the law prescribes, such election would be valid."

Foster v. Scarff, 15 Oh St 532, at page 537.

1. Unsubstantial irregularities in proceedings of a municipality in inaugurating an election on a bond issue for public improvement, which irregularities do not prejudice any one, will be disregarded.

2. Where the council of a municipality by resolution provides for submission to the electors of the question of issuing bonds for improving the city's sewerage system and provides in such resolution for a tax levy outside the 10 mill limitation for retirement of such bonds over a 25-year maximum period, and where every material requirement of law in connection with such improvement proceedings was complied with, except that the ballot prepared and submitted to the electors provided for a maximum retirement period of 30 years, and the issuance of such

bonds is approved by a vote in excess of the majority provided by law, such mis-statement in the ballot of the maximum maturity period of such bonds is not such departure from the statute as could mislead, deceive or confuse the electorate and does not invalidate the proceedings.

The State, ex rel. Spitler, City Solicitor, v. Beidleman, Auditor, 96 Oh Ap 210.

At 214 of this opinion the court quotes from State, ex rel. Bd. of Edn. of Springfield Local School District v. Maxwell, 144 Oh St 565:

"It has been generally held that defects, variances and irregularities in the several steps relating to the issuance of bonds should be material, harmful or both before the proceeding may be successfully attacked. See 5 McQuillen on Municipal Corporations (2 Ed) 363, 1025 and 1035, Section 2035, 2263 and 2264. It has also been held that unsubstantial irregularities in the resolution of a political subdivision inaugurating an election on a bond issue which do not prejudice any one will be disregarded, especially where the proposed bond issue as submitted was approved by considerably more than the requisite number of electors."

The evidence shows that a total vote of 3,332 was cast on the bond issue—2,540 voting for the issue of bonds and 792 voting against. In other words, the bond issue was approved by 76.2 per cent of the voters, an overwhelming per cent more than the law requires.

Courts are slow and very reluctant to override the clear intent and purpose of the electorate when expressed at the polls.

### Effect of Omissions and Irregularities

"The rule that election laws are, as a general rule, to be construed liberally, so as to preserve, if possible, and not defeat, the choice of the people as expressed at an election, applies to omissions and irregularities with respect to giving of notice thereof. Thus in most instances, a mere irregularity in giving of notice of a special election, or the failure to give such notice for full time prescribed in the statute, is not fatal to the validity thereof where knowledge of its approach and of the question to be passed upon is general throughout the political subdivision in which it is held, where a comparatively full vote is cast, and where it does not appear that by the mere irregularity in the notice any elector was misled to his disadvantage."

15 O. Jur., Page 373 §57.

### FINDING OF COURT

The finding of the court is that by the extensive advertising campaign with reference to this election carried on beginning as far back as January, 1955; the distribution of literature; letters and cards mailed to the householders of the city; the house to house canvass by the Citizens Committee; the posting of notices in various public places; the activities carried on by the Chamber of Commerce and the Junior Chamber of Commerce; items carried on systematically by our local newspaper, photographs of the proposed school building to be erected carried in the BELLEFONTAINE EXAMINER under which were items explaining the necessity of said bond issue; meetings held where the public was invited to attend; and the use of the local radio station brought home to the voters of the School District notice of the time, and place and purpose of the election, the voters were not misled in any way, and they

were fully informed and had knowledge of the coming election. This to the court is a substantial compliance as to notice.

Where the people have actually expressed themselves at the polls, courts are strongly inclined to uphold rather than defeat the will of the people.

No claims are made that the result of the election might have been different, or that any elector was induced to cast his ballot otherwise than he would have done had the notice fully complied with the statute.

The holding of the court is that the bonds to be issued are a valid and subsisting legal obligation against the Board of Education, Bellefontaine City School District, Bellefontaine, Ohio.

A writ of mandamus may issue. Exceptions noted.